Curran, Dennis J., J.
InVivo Therapeutics Corporation has alleged that its direct competitor, PixarBio Corporation, both of which are conducting spinal cord research, lured one of its employees, Yajing Hernandez, in violation of that employee’s non-compete agreement, offered her a pay raise of nearly $10,000, along with stock options and benefits, to work for it.
Hernandez followed the money, and left her loyalties to InVivo behind, exhibited by arguably stealing valuable proprietary information as to InVivo’s advances in neurological research and sending it to PixarBio. This is suspected because of numerous Yahoo emails Ms. Hernandez sent from her InVivo email account over to PixarBio for several months before and on the date of her departure from InVivo on September 17, 2014. The extent of the financial damage is potentially catastrophic.
Ms. Hernandez appeared in Court and was asked questions about her activities before being hired by PixarBio; she provided no responsive answers, and after a complaint for civil contempt was filed, a show cause order issued and she failed to appear for trial, she was found in contempt of court. Her counsel (who has since withdrawn) states that she is incommunicado, and may well have left the jurisdiction.
We are then left with the issue of what measures to take to determine whether Ms. Hernandez traded the confidential and proprietary information for thirty pieces of silver.
InVivo, understandably piqued by being stymied to obtain information as to the potential damage (which has arguably gone on, undetected, for over at least five months now), seeks a wholesale, employee-by-employee, search of all computer devices used by PixarBio’s supervisory and staff personnel to be conducted by an independent forensic consultant (admittedly paid for by InVivo).
InVivo seeks that the Court permit it to inspect “all PixarBio laptops and computers,” and to that end, order that the defendant identify:
... all items, devices, equipment and other sources capable of storing electronic information ... including without limitation, all servers, (including without limitation) email servers and file sharing servers, computers, laptops, desktops, hard-drives, portable electronic devices (including without limitation, smart phones, mobile phones, iPADS, tablets and other similar devices, portable or removable storage devices (including without limitation, USB drives, Flash drives, Thumb drives, memory cards and other similar devices, Gmail, Yahoo!, Dropbox, Google Drive and other similar services) and backups for any and all such items, devices, equipment and other sources, as well as all email addresses used.
The conduct of Ms. Hernandez is deeply troubling, and the Court’s sympathizes with InVivo, given the sensitivity of the propriety information Yajing Hernandez likely stole from InVivo and intended to give to her new, better-paying employer, PixarBio. However, there is no reason at this time to permit a wholesale intrusion into PixarBio’s computer and memory processes.
In this case, we consider, as we must, InVivo’s likelihood of success on the merits, the risk that InVivo will suffer irreparable harm, and then balance the risks of harm to the other parties and the public. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). InVivo has a strong likelihood of success; Ms. Hernandez appears to have stolen sensitive information from her employer’s computers before she left to work for its direct competitor. If, as the Court suspects, Ms. Hernandez did turn this information over to PixarBio, then InVivo will undoubtedly suffer irreparable harm from the loss of this critical research propriety information, now putatively in the possession of its competitor. Although equitable relief is ordinarily reserved for circumstances where there is no adequate remedy at law (i.e., money damages are unavailable), this case presents a classic example of *422 why an exception to the general rule is entirely appropriate. Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co., 399 Mass. 640, 643 (1987) (“monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant’s business”).
Thus, we turn to the relief to be fashioned.
InVivo wants forensic access to all of PixarBio’s computers of all of its employees. This is, to borrow a phrase, “a bridge too far.”
Instead, in an effort to find a reasonable middle ground that serves both parties’ interests, the Court has suggested that InVivo select the PixarBio employee most likely to whom Ms. Hernandez provided that stolen data.
InVivo has identified that individual, and PiixarBio does not dispute that designation. The Court therefore ORDERS that a computer forensic specialist representing each corporate party simultaneously inspect all devices of that individual, as detailed in InVivo’s proposed Order, and that such search be conducted for the period from June 1, 2014 through October 17, 2014.
Given the sensitivily of this data, time is of the essence in conducting this analysis.
If InVivo finds that Ms. Hernandez transferred the sensitive proprietary information at issue to that individual, then the entire landscape of equitable relief will change immediately and dramatically, and after an evidentiary hearing, this case may then proceed to a prompt analysis of all above-described computer and devices of all PixarBio’s officers, directors, employees and agents for a further search for the allegedly stolen information Ms. Hernandez transmitted to PixarBio.
PixarBio’s counsel has repeatedly denied in open court that the corporation possesses any of InVivo’s proprietaiy information. If this representation proves untrue, a hearing on sanctions against all offending parties should be scheduled forthwith.
ORDER
Accordingly, after a hearing on the plaintiff InVivo Therapeutics Corporation’s Renewed Motion for Preliminary Injunction against the defendants PixarBio Corporation and Frank Reynolds, this motion must be DENIED at this time, subject to immediate renewal if the person that InVivo has selected (and to whom PixarBio has no objection) reveals, by computer forensic analysis, that Ms. Hernandez has indeed disclosed InVivo’s proprietary and confidential information.